11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Carl Stanley
Friday, Jr.

Appellant

Vs.      
            No. 11-02-00073-CR  -- 
Appeal from Howard County

State of Texas

Appellee

 

The jury
convicted Carl Stanley Friday, Jr. of the offense of murder, found the
enhancement allegation to be true, and assessed punishment at confinement for
75 years and a $10,000 fine.  We affirm.  

Appellant
presents seven points of error on appeal. 
In the first point, appellant contends that the trial court erred in
admitting into evidence the written statement given by appellant to
police.  Contrary to appellant=s assertion, however, the record reflects
that the statement was not offered or admitted into evidence.  Nor was the statement read to the jury.  The first point of error is overruled. 

In his
second point, appellant contends that the trial court erred by allowing
evidence regarding appellant=s written statement.  Under this
point, appellant references his testimony at the punishment stage of trial
wherein the State impeached appellant with a prior inconsistent statement from
his written statement.  Appellant
admitted having made the prior inconsistent statement, and the written
statement was not offered into evidence or read to the jury.  When an accused testifies at his trial, he
may be impeached with prior voluntary statements regardless of whether the statements
were made as a result of custodial interrogation.  TEX. CODE CRIM. PRO. ANN. art. 38.22, ' 5 (Vernon 1979); Lykins v. State, 784 S.W.2d
32, 35-36 (Tex.Cr.App.1989).  In this
case, the trial court did not abuse its discretion in determining that the
statement was made voluntarily. 
Consequently, the trial court did not err by allowing the State to
impeach appellant with the statement. 
The second point of error is overruled. 









In his
fifth and sixth points of error, appellant challenges the legal and factual
sufficiency of the evidence.  In his
seventh point, appellant also attacks the sufficiency of the evidence by
arguing that the trial court erred in denying appellant=s motion for an instructed verdict.  Such a challenge to the denial of a
defendant=s motion for instructed verdict shall be
treated as a challenge to the legal sufficiency of the evidence.  Madden v. State, 799 S.W.2d 683
(Tex.Cr.App.1990), cert. den=d, 499 U.S. 954 (1991).  In order
to determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664
(Tex.Cr.App.2000).  In order to
determine if the evidence is factually sufficient, we must review all of the
evidence in a neutral light and determine whether the evidence supporting guilt
is so weak as to render the conviction clearly wrong and manifestly unjust or
whether the evidence supporting guilt, although adequate when taken alone, is
so greatly outweighed by the overwhelming weight of contrary evidence as to
render the conviction clearly wrong and manifestly unjust.  Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Johnson
v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997);
Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).  

The record
shows that the victim, Bob Joe Coonce, was bludgeoned to death by a blunt
object that fractured his skull at various points.  After his death, the victim was placed in the back of his car and
set on fire in the early morning hours of May 4, 2001.  Later that same morning, a vacant house
belonging to appellant=s
mother was intentionally set on fire. 
Firefighters responded and were able to put the fire out before it
consumed the house.  The victim=s blood was found on three walls and on the
floor in the dining room.  Even though
someone had attempted to wipe the blood off the wall, a Atremendous amount of blood spatter@ was located from the baseboard to about five
feet high on the walls.  When the victim=s body was recovered, his wallet, his
glasses, and a bank bag containing a lot of money were missing.  








Security
videotapes from two convenience stores in Big Spring and phone records from
appellant=s cell phone placed the victim and appellant
together on May 3, 2001, from about 12:50 p.m. to 8:40 p.m.  The victim, a Aloner type person,@ had called appellant nine times in the few days before his death.  Videotape from one of the convenience stores
showed the victim coming into the store alone at about 12:30 p.m. and returning
about 20 minutes later with appellant. 
The videotape reflected that the victim purchased a drink for appellant
and that appellant told the victim that his phone was plugged in if the victim
wanted to use it.  Appellant=s phone records revealed that he and the
victim left Big Spring and went to Lubbock. 
During their trip, appellant=s phone was used by the victim to call a pain clinic to get a
prescription for Lortab and also by appellant to call his wife.  Upon returning to Big Spring, appellant and
the victim went to the convenience store where appellant=s wife worked.  Appellant and his wife got into an argument about their financial
problems and about him going to Lubbock. 
The videotape from the store where appellant=s wife worked showed that, at approximately
8:18 p.m., the victim apologized to appellant=s wife because they were gone so long. 
The victim left the store at about 8:40 p.m. and was not seen alive
again.  Appellant left the store shortly
thereafter.  Appellant=s wife received a call from appellant at 9:19
p.m., after which she was A[v]ery upset.@  Appellant came back to the store at about
10:30 p.m., at which time he and his wife were being secretive and quiet.  Appellant asked her for Asome rags and stuff, a mop@; and she gave appellant some towels.  The videotape reflected a drastic change in
the demeanor of both appellant and his wife. 









A witness
who lived near appellant=s mother=s house testified that, on the night of the
victim=s death, he saw appellant=s car and the victim=s car at appellant=s mother=s house.  Appellant=s mother testified that nobody lived in her
house but that appellant had a key to the house and sometimes allowed people to
stay there.  Another witness, David Wayne
Hyer, was a good friend of appellant=s and testified about a conversation that he had with appellant on
about May 6, 2001. Hyer testified that appellant told him that appellant had
killed a man at his mother=s house, which he was going to rent to the man.  Appellant explained that the man had grabbed
Ahis groin and tried to kiss him@ and that appellant Agrabbed the closest thing and hit him with
it.@  Hyer
testified that appellant said he had Aburied,@ rather than burned, the body.  Hyer also testified that appellant said he Aburned his mother=s house down@ because he could not clean up the blood that Awent everywhere.@  At
the time of the conversation, appellant was pale and distraught.  After telling Hyer this account, appellant
said, AForget I even said this.  I was just bulls---ting with you.@  

Appellant
presented alibi witnesses to show that he was not with the victim on the day of
the offense.  However, the testimony of
appellant=s alibi witnesses, including his wife and his
stepson, were contradicted by the videotapes and by the phone records from
appellant=s cell phone.  The jury, as the trier of fact, was the sole judge of the
credibility of the witnesses and of the weight to be given to their testimony.  TEX. CODE CRIM. PRO. ANN. arts. 36.12 &
38.04 (Vernon 1979 & 1981).  

We hold
that the evidence is both legally and factually sufficient to support appellant=s conviction.  The fifth, sixth, and seventh points of error are overruled.  

In his third
point of error, appellant argues that the trial court erred in admitting State=s Exhibit No. 26, a self-authenticated copy
of the phone company=s
records for appellant=s cell
phone and the affidavit of the custodian of those records, because the records
had not been timely filed prior to trial as required by TEX.R.EVID.
902(10)(a).  Appellant correctly asserts
that the State did not comply with the 14-day requirement of Rule 902(10)(a).  Thus, the trial court erred in admitting the
exhibit.  Hernandez v. State, 939 S.W.2d
665, (Tex.App. - El Paso 1996, pet=n ref=d).  

We hold,
however, as did the court in Hernandez, that the error was
harmless.  TEX.R.APP.P. 44.2(b).  The record in this case shows that a similar
document, State=s Exhibit No. 24, was properly introduced
without objection.  State=s Exhibit No. 24 consisted of relevant
portions of the phone bill for appellant=s cell phone.  State=s Exhibit No. 24 showed the date, the time,
and the phone number of the outgoing and incoming calls.  State=s Exhibit No. 26 duplicated the information contained in No. 24 but
added information regarding the location of the tower used for the calls.  Other evidence revealed appellant=s location, including the testimony of
appellant=s wife that he went to Lubbock and returned
on the day of the offense.  The error in
the introduction of State=s Exhibit No. 26 did not affect appellant=s substantial rights and, therefore, must be disregarded under Rule
44.2(b).  The third point of error is
overruled.  








In his
fourth point, appellant argues that the trial court erred in prohibiting Texas
Ranger Jess Malone from testifying about other suspects in this case as
proffered in appellant=s
offer of proof.  The record shows that
the trial court sustained the State=s objections when appellant inquired about the relationship between the
victim and Gerald Cox, Jr. and about the demeanor and deceptiveness of Daniel
Lee during an interview with officers. 
Ranger Malone testified that, while investigating this case, he considered
Cox and appellant to be suspects.  In
the offer of proof, Ranger Malone testified that he had no personal knowledge
of the relationship between the victim and Cox but that he had been told by the
sheriff=s deputies that they had a tumultuous relationship.  The trial court did not abuse its discretion
in excluding this testimony as hearsay. 
See TEX.R.EVID. 801, 802, & 803. 
During the offer of proof, defense counsel also asked Ranger Malone, ADid you feel [Lee] to be@ deceptive, vague, defensive, and
uncooperative.  Ranger Malone answered
affirmatively to these questions.  The
trial court did not abuse its discretion in excluding this testimony by
sustaining the State=s
objection based upon relevancy.  See
TEX.R.EVID. 401 & 402.  At the time
these questions were posed, there was nothing in the record to indicate the
relevance of the demeanor of Lee during an interview with officers.  Subsequently, during appellant=s cross-examination of Deputy Ron Allen, it
was revealed that Lee, along with a Along list@ of
others, had been a potential suspect in this case.  Deputy Allen also testified during cross-examination that,
although he had been concerned with the way Lee answered questions during his
interview, Lee was cleared as a suspect when his alibi checked out.  The fourth point of error is overruled. 

The
judgment of the trial court is affirmed. 


 

JIM R. WRIGHT

JUSTICE

 

December 19, 2002

Do not publish.  See
TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and 

Wright, J., and McCall, J.